IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

EMMANUEL N. LAZARIDIS     *

      Plaintiff,     *

v.     *     Case No.   CCB-10-CV 2338

    *

STEPHEN CULLEN et al.     *

      Defendants     *

*    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANUDM IN SUPPORT OF
## <u>DEFENDANT STEPHEN J. CULLEN'S MOTION TO DISMISS</u>

Anthony W. Kraus (Bar No. 2351)
akraus@milesstockbridge.com
Jeffrey P. Reilly (Bar No. 5837)
jreilly@milesstockbridge.com
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202
Tele. (410) 727-6464
Fax.  (410)-385-3700

Counsel for Defendant Stephen J. Cullen

TABLE OF CONTENTS

page

Introduction                                                                              1

Statement of Facts                                                                        4

      Background and Initial Custody Proceedings in Michigan                   4

      Delaware Proceedings and Michigan Warrant                                6

      Maryland Proceedings                                                     9

Standard of Review                                                                       12

Lazaridis's Latest Claims are Barred by *Res Judicata*.                                   13

Lazaridis Has No Standing to Sue Because He Does Not Face Imminent Injury.                23

Lazaridis Has No Standing to Assert Rights on Behalf of his Daughter, V.L.               27

Lazaridis's Complaint Fails to State a Claim Against Cullen in Counts One
and Two Because He Is Not a State Actor.                                                  28

Lazaridis's Allegations in Counts One and Two are Based on Faulty Legal
Premises Rejected by Other Courts.                                                        30

Lazaridis's Allegations in Count Three, Accusing Cullen of Conspiracy,
Fraud and Malpractice, Fail to State Claims Because Lazaridis has Incurred No
Tortious Injury, Conspiracy is not an Independent Tort, Lazaridis has not been
Defrauded nor can he Satisfy the Other Stringent Pleading Requirements for
Fraud, and Cullen Owed No Duty in Tort to Lazaridis or his Daughter.                      32

All Lazaridis's Claims Against Cullen are Barred by the Judicial Privilege.               36

Lazaridis's Claims Remain Barred under the Fugitive Disentitlement Doctrine.              37

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

EMMANUEL N. LAZARIDIS          *

    Plaintiff,          *

v.          *          Case No.   CCB-10-CV 2338

              *

STEPHEN CULLEN et al.          *

    Defendants          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANUDM IN SUPPORT OF
## DEFENDANT STEPHEN J. CULLEN'S MOTION TO DISMISS

    Defendant Stephen J. Cullen ("Cullen"), through undersigned counsel, submits the following memorandum in support of his motion to dismiss the Complaint of plaintiff Emmanuel N. Lazaridis ("Lazaridis").

### Introduction

    This matter is a clone of a 2007 case brought in this Court by Lazaridis against his ex-wife, her attorney Cullen, the Maryland Attorney General's Office and the Maryland Attorney General, Hon. Douglas F. Gansler.  Lazaridis's 2007 case was dismissed by Judge Davis in a Memorandum Opinion dated March 31, 2008 and then also dismissed on appeal by the Fourth Circuit.  See Lazaridis v. Wehmer, No. 07-3112-AMD (D. Md.); app. dismissed (4th Cir. No. 08-1503, July 1, 2008).  This recently-filed sequel, commenced on August 20, 2010, constitutes at least the twelfth lawsuit filed by Lazaridis seeking to litigate issues relating to a custody dispute concerning his daughter, "V.L.," whom

he took to Europe to live with him in or about December, 2002, and away from his ex-wife, who was then resident in Michigan.[1]

Most of Lazaridis's suits have been filed in federal court, where he litigates long-distance from Heraklion, Crete, proceeding in forma pauperis and outside the reach of the courts' ability to confirm his actual financial status, or the ability of adverse litigants to reach his assets for his pursuit of frivolous claims.  At that remove, he also has remained beyond the reach of an arrest warrant for child kidnapping in Ottawa County, Michigan.  See Michigan v. Emmanuel Nicholas Lazaridis, No. 04-28231 (October 7, 2004) (attached as Exhibit 8) and Declaration of Mary Dykstra (attached as Exhibit 9).[2]

In his latest Complaint before this Court, similarly to his original 2007 Complaint[3], Lazaridis pleads three counts that respectively (1) challenge the constitutionality of Maryland's version of the Uniform Child Custody and Jurisdiction and Enforcement Act ("UCCJEA"), which he claims denies him due process of law as a foreign custodial parent, (2) challenge the UCCJEA on behalf of his daughter, V.L., because it allegedly displaces European law concerning her custody, denies her due process, and impairs her fundamental rights under the United Nations Conventions on the Rights of the

---

[1]   Aside from his earlier case before this Court, see also Lazaridis v. Wehmer, Civ. No. 06-793-SLR; 2007 WL. 2286135 (D.Del., Aug. 8, 2007); rev'd, 288 Fed. Appx. 800, 2008 WL 3823906 (3d. Cir., Aug. 15, 2008); on remand, 2008 WL 4758551 (D. Del., Oct. 28, 2008); aff'd 591 F.3d 666 (3d Cir. 2010) (decisions attached as Exhibit 1); Lazaridis v. Donker, Civ. No. 1:07-fp-376, 2007 WL 2029645 (S. D. Mich., July 11, 2007) (decision attached as Exhibit 2); Lazaridis v. Herald Co., 5:05-CV-111, 2006 WL 222839  (W. D. Mich., Jan. 26, 2006); aff'd, No. 06-1830 (6th Cir., March 13, 2007) (decisions attached as Exhibit 3); Lazaridis v. Lazaridis, Civ. No. 02-1681-SLR , 2003 WL 21056744 (D. Del.,  May 7, 2003) (decision attached as Exhibit 4); Letsos v. Warren, No. 461, 2005, 2006 WL 1640218 (Sup. Ct. Del., June 12, 2006) (decision attached as Exhibit 5); T.W. v. E.L., No. CN 04-08707, 2007 WL 4793123 (Del. Fam. Ct., Nov. 29, 2007) (decision attached as Exhibit 6); Little v. White, No. 659-2007, 2008 WL 4216354 (Del., Sept. 16, 2008) (decision attached as Exhibit 7); Lazaridis v. United States Department of Justice,  No. 1:09-cv-01177-RMC (D.D.C.), 713 F. Supp. 2d 64 (D.D.C. 2010); Lazaridis v. United States State Department, No. 1:10-cv-01280-RMC (D.D.C.); Lazaridis v. the National Center for Missing and Exploited Children, No. 1:05-cv-01029-CMH-TRJ (E.D.Va.); Lazaridis v. Social Security Administration, No. 1:10-cv-01386-RMC (D.D.C); Lazaridis v. the National Center for Missing and Exploited Children, 1:10-mc-00353-RMC (D.D.C.); Lazaridis v. Drei, Civ. No. 1:05-cv-01193-FJS-DRH (N.D.N.Y.); and In re Application of Lazaridis, No.1-10-MC17 (M.D.N.C.).

[2]   Lazaridis recently has petitioned the Michigan court which issued the warrant to withdraw it, and reportedly has been opposed in his efforts by the Ottawa County Prosecutor's office, which continues to view him as an international fugitive. As noted infra, the outcome of that proceeding is irrelevant to all but one of the many grounds for dismissing Lazaridis's claims.

[3]   The current 2010 Complaint and the 2007 Complaint are attached, respectively, as Exhibits 10 and 11.

Child, and (3) accuses Cullen and V.L.'s mother of "conspiracy, fraud and malpractice" in connection with UCCJEA proceedings instituted by Lazaridis's parents before the Circuit Court for Cecil County in 2007.

Lazridis's latest Complaint states no valid claim against Cullen, measured under even the most indulgent standards of notice pleading, not to mention under the more stringent "facial plausibility" test now prescribed by the Twombly/ Iqbal guidelines.[4]  His claims against Cullen should be dismissed because

     1.     they are barred by *res judicata*;

     2.     neither Lazaridis nor V.L. has suffered or is threatened with injury providing either of them with standing to sue;

     3.     Lazaridis has no standing to assert the rights of his daughter, V.L., in this matter;

     4.     Cullen is not subject to Lazaridis's Count One and Count Two claims because he is not a state actor;

     5.     Lazaridis's allegations in Counts One and Two are based on faulty legal premises rejected by other courts;

     6.     Lazaridis's common law tort claims in Count Three fail because he has alleged no actionable injury arising from any of the alleged tortious conduct, because there is no independent tort of conspiracy under Maryland law, because Cullen as the attorney for Lazaridis's ex-wife owed no professional duty to Lazaridis or V.L. that could provide a basis for malpractice liability to them, and Lazaridis was not defrauded by any action allegedly committed by Cullen;

---

[4] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937 (2009).

7.      all Lazaridis's claims against Cullen are based on alleged actions and communications by Cullen as counsel in Cecil County litigation, for which he is absolutely immune from liability under the judicial and litigation privilege; and

8.      Lazaridis's latest claims should continue to be barred in this Court under the fugitive disentitlement doctrine, just as was his earlier 2007 lawsuit.

<u>Statement of Facts</u>

The basic facts underlying Lazaridis's flood of litigation regarding the custody of his daughter have been recounted by many courts, and as Judge Davis noted at p. 2 of his Memorandum Opinion dismissing the 2007 case, have not been materially in dispute.  A summary of them was included in that Memorandum Opinion at pp. 2-4, and for the sake of clarity, a slightly fuller account of them, taken from Lazaridis's other litigation, is set forth below.

A.      <u>Background and Initial Custody Proceedings in Michigan</u>

In 1995, Lazaridis and Christina Wehmer[5] were married in Indiana. <u>See</u> <u>Lazaridis v. Lazaridis</u>, 2003 WL 21056744 at *1 (D. Del., May 7, 2003).[6]  In 1998, the Lazaridises moved to Florida, where their daughter, V.L., was born in July 2000.  <u>Id</u>.

As Lazaridis has noted in other federal pleadings, he holds a PhD. in statistics from the University of Chicago and for many years worked

> continuously as a medical statistician and biostatistician with expertise in pharmaceutical development, aging, diabetes, health services and cancer genetics, as a faculty professor and researcher for such prestigious institutions as the Indiana University School of Medicine, the Lee Moffitt Cancer Center and Research Institute and the World Health Organization.

---

[5]  Christina has re-married and now goes by her current husband's last name, which is Golm.  She has been referred to by her maiden name -- Wehmer -- in several of the custody-related cases in which she has been involved with Lazaridis; and this memorandum will continue to do so to avoid confusion.  It also should be noted that both Lazaridis's ex-wife as well as his mother are named Christina, and that references to "Christina Lazaridis" in the attached cases can refer to one or the other.
[6]  <u>See also</u>, generally, <u>Lazaridis v. Wehmer</u>, 2008 WL 3823906 (3d. Cir., Aug. 15, 2008) which recounts most of the facts set forth above.

See Lazaridis v. Wehmer, 2007 WL 2286135 at 1 n.1 (D. Del. 2007), quoting from Lazaridis v. Drai, 05-cv-1193 (N.D.N.Y. September 20, 2005) (D.I. 1 ¶¶ 6, 7.)[7]   The World Health Organization job was with its International Agency for Research on Cancer, in Lyon France, which post he accepted in December 2001. Lazaridis, 2003 WL 21056744 at *1.

In early 2002, the Lazaridises moved from Florida to Wilmington, Delaware, which is where Lazaridis's parents live. Id.   In May 2002, the Lazaridises then moved to Lyon. Id. By September 2002, the relationship between the Lazaridises had deteriorated; and Wehmer returned to the United States with her daughter, and moved in with her parents in Michigan. Id. Lazaridis initiated divorce proceedings in Michigan and in France. Lazaridis v. Wehmer, et al., 2008 WL 4758551 at * 3 (D. Del., October 28, 2008).   Meanwhile, Wehmer was temporarily hospitalized; and her parents sought interim guardianship of V.L. in a Michigan state court, which was granted. Lazaridis v. Lazaridis, 2003 WL 21056744 at * 1.   However, when the grandparents sought an extension of their guardianship, Lazaridis returned to the United States to oppose their motion, which was subsequently denied. Id.

In November 2002, Lazaridis filed a petition in the Michigan state court seeking sole legal and physical custody of V.L. Id. The Michigan state court granted him temporary custody. Id. Upon release from the hospital, Wehmer requested that the Michigan state court enter an order prohibiting Lazaridis from removing V.L. from the United States pending a full hearing on Lazaridis's custody petition. Id. The court granted Wehmer's request and scheduled a hearing for December 17, 2002. Id.

---

[7] How Lazaridis's credentials, work-history, and custody obligations to V.L. square with his persistent representations of having little or no income in his many *in forma pauperis* applications is unclear.   It additionally is open to question how his response to this Court's requirement that he have a local mailing address, consistent with Local Rule 102.1.b.iii, has been properly satisfied by his recently designating "409 Cathedral Street, Baltimore Maryland 21201" for that purpose. See Lazaridis Motion to Accept Out of Time Response to Court's Order of October 19, 2010 at p.1.   409 Cathedral Street is the address of the Basilica of the Assumption, which appears to been proffered speciously without any real expectation that it will serve a reception agent for keeping him promptly apprised of events in this matter and notices from the Court.  Failure to have complied by providing proper local address is itself reason for dismissal under Local Rule 102.1.b.iii.

Nevertheless, prior to the hearing, Lazaridis obtained a new passport for V.L. and filed a motion

to rescind the Michigan state court's order prohibiting him from removing V.L. from the United States.

Id. Despite the fact that his motion was denied, he took V.L. out of the country on or about

December 1, 2002. Id. at * 1 - * 2.

B.     Delaware Proceedings and Michigan Warrant

On December 16, 2002, a day before the scheduled Michigan state court hearing, Lazaridis filed

a petition pursuant to the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq.,

("Hague Convention Petition") in the United States District Court for the District of Delaware,

seeking an order directing the return of V.L. to France. Id. at * 1.   The petition asserted that jurisdiction

was proper in the District of Delaware because the child was under his care there and the care of his

parents in Wilmington. Id. at * 1- * 2.   The next day, on December 17, 2002, Lazaridis failed to attend

the Michigan state court hearing, but instead terminated his Delaware counsel's representation by

facsimile from his workplace in France. See id. at * 2.

On January 17, 2003, in response to a request by Wehmer, the New Castle County Police

attempted to check on the welfare of the child at the home of Lazaridis's parents in Wilmington. Id. The

police were told that the parents had not seen Lazaridis or V.L. since November 2002, and did not

know their whereabouts. Id.

The District Court in Delaware dismissed Lazaridis's Hague Convention Petition on May 7, 2003,

after being presented with evidence by Wehmer demonstrating that the Court lacked jurisdiction because

Lazaridis had failed to show that V.L. was in Delaware on December 16, 2002. Id.  * 2 - * 3  This

evidence included: (1) the fact that Lazaridis had obtained a passport for V.L. in November 2002; (2) a

December 1, 2002 manifest for a flight listing the names of Lazaridis and V.L.; (3) the December 17,

2002, facsimile from France from Lazaridis to his Delaware attorney; (4) Lazaridis's failure to attend the December 16, 2002 hearing in Michigan; (5) the New Castle County Police's inability to locate V.L. in Delaware in January 2003; and (6) Lazaridis's failure to produce V.L. in Delaware or divulge her whereabouts. Id. at * 2.

On June 29, 2004, a French court granted Wehmer and Lazaridis joint custody of V.L in their divorce proceedings, but ordered that the child's primary residence would be with Wehmer. See Lazaridis v. Wehmer, et al., 2008 WL 4758551 at * 3 (D. Del., October 28, 2008). The French custody order was registered by Wehmer in Michigan.   In October 2004, an Ottawa County court issued an arrest warrant for Lazaridis for felony kidnapping of V.L. Id.[8] On July 2, 2004, Wehmer registered the June 29, 2004 French custody order in the Family Court in Delaware over Lazaridis's objection; and he appealed to the Delaware Supreme Court. Id. That court affirmed the registration, and among other things, noted that Lazaridis's objections to the proceedings for alleged lack of personal jurisdiction appeared to be misguided because OCCJEA "registration is a ministerial act for purposes of enforcement of the order of the foreign court, which retains jurisdiction over the matter." Id. at * 3; Letsos v. Warren, 901 A.2d 120, 2006 WL 1640218 at * 2 (Del., June 12, 2006).

On August 4, 2006, Lazaridis filed a motion in the Delaware Family Court requesting relief from registration and enforcement of the June 29, 2004 French custody order, on the basis that Greece was exercising jurisdiction over the minor child, V.L. Lazaridis v. Wehmer et al., 2008 WL 4758551 at * 3. On October 11, 2006, Wehmer requested that the Delaware Family Court register a second French court order dated April 5, 2005, that gave to her the right to "exclusively exercise parental authority" over the minor child. Id.

---

[8]  See Michigan v. Emmanuel Nicholas Lazaridis, No. 04-28231 (October 7, 2004) (attached as Exhibit 10) and Declaration of Mary Dykstra (attached as Exhibit 11).

On December 8, 2006, Lazaridis filed a motion with the Delaware Family Court to vacate registration of a foreign child support order. Id. However, before the Family Court could issue a ruling, on December 27, 2006, Lazaridis filed an action in the United States District Court for the District of Delaware against Wehmer, her attorneys, and the Delaware Attorney General to prevent them from enforcing the June 29, 2004 French custody order awarding custody of V.L. to Wehmer. Id. He also sought to have various Delaware statutes declared unconstitutional. Id.

In January 2007, a Greek court granted Lazaridis *temporary* custody of V.L., and on April 27, 2007 continued the *temporary* custody order. Id. On July 30, 2007, the Family Court vacated the registration of the April 5, 2005 French order that gave Wehmer the right to "exclusively exercise parental authority" over V.L. Id.

However, one month later, Lazaridis requested that the Family Court reopen its decision and vacate the order that registered the June 29, 2004 French custody order in light of the new Greek temporary custody orders. Id. On November 29, 2007, the Family Court denied Lazaridis's request, noting that he had not sought to register the 2007 Greek order and holding that the request was barred by *res judicata.* Id. The Family Court noted that both parties were free at any time "to attempt to register the most recent order that had been issued by a court maintaining proper jurisdiction over the matter." Id.; T.W. v. E.L., 2007 WL 4793123 at *2 (Del. Fam. Ct., Nov. 29, 2007). On September 16, 2008, the Delaware Supreme Court affirmed the judgment of the Family Court. Lazaridis v. Wehmer et al., 2008 WL 4758551 at * 3. See also Little v. White, No. 659, 2008 WL 4216354 (Del., Sept. 16, 2008).[9]

---

[9] The Delaware state court decisions all used pseudonyms for the litigants, but subsequent court rulings have disclosed their identities. See, e.g., Lazaridis v. Wehmer, 2008 WL 4758551 at * 3 (D. Del., October 28, 2008).

On August 8, 2007, the Delaware federal district court, applying the fugitive disentitlement doctrine, dismissed Lazaridis's action against Wehmer, her attorneys, and the Delaware Attorney General pursuant to 28 U.S.C. § 1915(e), see Lazaridis v. Wehmer, et al., 2007 WL 2286135 (D. Del., July 11, 2007); and Lazaridis appealed. The Third Circuit Court of Appeals declined to apply the fugitive disentitlement doctrine and remanded the case. See Lazaridis v. Wehmer, et al., 288 Fed. Appx 800, 2008 WL 3823906 (3d Cir. 2008). However, in October 2008, Lazaridis's suit again was dismissed by the district court on multiple grounds, including jurisdictional limitations under the *Rooker-Feldman* doctrine, *res judicata* and collateral estoppel, *Younger* abstention, failure to state a claim for alleged violation of V.L.'s rights under foreign law, and lack of state action to support claims against the private defendants under § 1983. On appeal, the Third Circuit recently affirmed. Lazaridis v. Wehmer, 591 F.3d 666 (3d Cir. 2010).[10]

C.    Maryland Proceedings

Promptly after the initial dismissal of the 2006 Delaware federal suit, Lazaridis's mother filed a petition in the Circuit Court for Cecil County, Maryland on August 28, 2007, seeking to register a Greek judicial order (issued on Jan. 31, 2007) awarding temporary custody of V.L. to Lazaridis. See Lazaridis v. Wehmer, Civil Action No. 07-3112-AMD (March 31, 2008), Mem. Op. at 3.    Additionally,

---

[10]   There are three other federal lawsuits that Lazaridis filed during the 2005-2007 time frame, before he filed his original federal suit in Maryland in November of 2007. In 2005, he sued the Michigan Herald newspaper because just before the Michigan warrant was issued, it ran a story on the underlying allegations of his abduction of his daughter, which he claimed was libelous. The action was dismissed based upon the fugitive disentitlement doctrine. Lazaridis v. Herald Co., 5:05-CV-111, 2006 WL 222839 (W. D. Mich. 2006) (decision attached as Exhibit 3), aff'd, No. 06-1830 (6th Cir. March 13, 2007) (slip decision attached as Exhibit 4). In 2005, he also brought suit for malpractice in New York against his attorney in the French divorce and custody proceedings. Lazaridis v. Drei, Civ. No. 1:05-cv-01193-FJS-DRH (N.D.N.Y.) The case was eventually dismissed for lack of jurisdiction because the complaint conceded that Lazaridis "has been living in Greece with his daughter since late 2002," and while a citizen of the United States, he was not then a citizen of any particular state, and thus could not avail himself of diversity jurisdiction for purposes of bringing his claims. See Sept. 24, 2008 Order at 2-3. In Michigan in 2007, he also sued various state court judges, court personnel, an F.B.I agent, Wehmer, several attorneys, and others for various grievances arising from Michigan judicial proceedings, but that case also was dismissed based on the fugitive disentitlement doctrine. Lazaridis v. Donker, Civ. No. 1:07-fp-376, 2007 WL 0209645 (S. D. Mich., July 11, 2007) (decision attached as Exhibit 2).

Lazaridis's father filed a petition in the same court on October 10, 2007, seeking to register a Greek visitation order with respect to Wehmer (issued on July 18, 2007). Id.

Wehmer was notified of the proceedings and was referred to defendant Cullen, who agreed to represent her pro bono because of her inability to afford paid counsel. Id. at 4. Pursuant to Maryland's UCCJEA, Md. Code, Family Law Art. § 9.5-305, Cullen filed timely notices contesting the registration in Cecil County. Id. Lazaridis was notified of the hearings by mail on November 6, 2007. Id. In response to that notification, Lazaridis filed his 2007 Maryland federal lawsuit in this Court. Id. Like the complaint in his 2006 Delaware federal lawsuit, the Maryland federal complaint contended that application of Maryland's UCCJEA in the Cecil County proceedings would deny him and V.L. due process of law. Id. Lazaridis asserts that because neither he, nor his former wife, nor his daughter has minimum contacts with Maryland, Maryland's UCCJEA cannot properly be applied to them. Id.

On January 23, 2008, the Circuit Court for Cecil County convened a hearing on the registration of the Greek orders. Lazaridis and his parents failed to appear, and the case was dismissed. Lazaridis v. Wehmer, No. D-07-964 (Cir. Ct. Cecil Co., January 23, 2008) Transcript at p. 2 and 8 (attached as Exhibit 13). The circuit court concluded that the registration petition had been filed by Lazaridis's parents as Lazaridis's agent, and that the proceeding should be barred under the fugitive disentitlement doctrine. Id. at 8. The petition also was rejected based on findings that the Greek court had no jurisdiction to issue its orders and that the state of Maryland had no connection with the interested parties for purposes of exercising jurisdiction. Id.

On March 31, 2008, this Court dismissed Lazaridis's Maryland federal lawsuit, concluding as had other courts that he should be barred under the fugitive disentitlement doctrine from prosecuting it. Lazaridis v. Wehmer, Civil Action No. 07-3112-AMD (D. Md.), ECF Entry No. 24 (March 31, 2008),

Mem. Op. at 5.  Lazaridis moved for reconsideration on April 8, 2009, which was denied.  See Id., ECF

Entry No. 29 (April 8, 2009) and No. 30 (April 9, 2008).  Lazaridis then filed an appeal to the Fourth

Circuit.  Id., ECF Entry No. 31 (April 29, 2008). When he failed to file a timely brief, or to respond to

a warning notice, the Fourth Circuit dismissed his appeal for failure to prosecute under Local Rule 45.

Id., ECF Entry No. 33 (July 1, 2008).  On September 23, 2009, after the Third Circuit had reversed the

Delaware district court for its application of the fugitive disentitlement doctrine, Lazaridis submitted

the Third Circuit's opinion to Judge Davis and pursuant to Rule 60 F.R.C.P. attempted to use it as

grounds for vacating Judge Davis's earlier dismissal order.  Id., ECF Entry No. 35 (September 23,

2008).  The district court denied the motion, and Lazaridis did not appeal that ruling.  Id., ECF Entry

No. 39 (October 23, 2009.)

In the meantime, Lazaridis's father had appealed the Cecil County court's rejection of his

UCCJEA petition to register the Greek visitation order.  On February 19, 2009, the Court of Special

Appeals reversed the circuit court on procedural grounds, concluding that a continuance should have

been granted to permit the petitioners to attend the hearing. Lazaridis v. Wehmer, App. No. 7 (Md. Ct.

Sp. App., February 19, 2009) (Slip. Op. attached as Exhibit 13).  In remanding the case for further

proceedings, the Court of Special Appeals instructed the trial court to register the July 18, 2007

visitation order if it satisfied the three criteria of  FL § 9.5-305(d)(2)(i)-(iii).  (Id. at 11).   On remand,

the circuit court convened another registration hearing on September 11, 2009; and again neither of

Lazaridis's parents appeared.  See Transcript, Lazaridis v. Wehmer, No. D-07-964 (Cir. Ct. Cecil Co.,

September 11, 2009), at p. 2 (attached as Exhibit 14).  At that hearing, Cullen acquiesced on his

client's behalf to registration of the visitation order, as sought by Lazaridis's father; and circuit court

judge proceeded to register it.  Id. at 9.

Lazaridis's mother then attempted to appeal the Circuit Court's earlier rejection of her petition to register the Greek custody order, but the Court of Special Appeals rejected it, holding that she had let her rights expire by not originally submitting an appeal along with Lazaridis's father. Lazaridis v. Wehmer, App. No. 2190 (Md. Ct. Sp. App., July 27, 2010.) (Slip Op. attached as Exhibit 15). Approximately a month later, on August 20, 2010, Lazaridis filed his current federal Complaint, seeking to resurrect his earlier claims before this Court through the facile expedient of simply filing a duplicative new lawsuit.

## Standard of Review

To survive a motion to dismiss under Rule 12(b), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2))A. To do so, a complaint must allege more than just "'labels and conclusions,'" "[t]hreadbare recitals of the elements of a cause of action," and "'naked assertions' devoid of 'further factual enhancement.'" Id. at 1949-50.

Because Lazaridis seeks to bring this case in forma pauperis, the Court is further authorized under 28 U.S.C. § 1915(e)(2)(B)(i) to "dismiss the case at any time if the determines that ... the action . . . is frivolous or malicious."   Consistent with these standards, Lazaridis's claims should be dismissed for each of the following reasons.

ARGUMENT

1.   Lazaridis's Latest Claims are Barred by *Res Judicata*

The doctrine of *res judicata* contemplates "at a minimum that courts not be required to adjudicate nor defendants to address successive actions arising out of the same transaction and asserting breach of the same duty." Hinton v. Rudasill, 2010 WL 761154 at * 2 (D. Md., Feb. 25, 2010); aff'd 2010 WL 2814324 (4th Cir., July 19, 2010); Edmond v. Mayer, 2007 WL 5391046 at * 1 (D. Md., Nov. 13, 2007).  In the interest of repose and judicial economy, it precludes Lazaridis's pending claims, which are patently duplicative of his 2007 lawsuit.

Lazaridis's 2007 Complaint, just as does his current Complaint, invoked this Court's federal question jurisdiction under 28 U.S.C. § 1331.  For purposes of determining the preclusive effect of the dismissal of his claims in the 2007 federal lawsuit, federal law governs.  Grausz v. Englander, 321 F.3d 467, 472 (4th Cir. 2003) ("We look to *res judicata* principles developed in our own case law to determine whether an earlier federal judgment . . . bars a claim asserted in a later action."), citing Keith v. Aldridge, 900 F.2d 736, 739 (4th Cir.) ("Federal law controls [the] assessment of [an] earlier federal judgment."); cert. denied 498 U.S. 900 (1990).

As developed under federal common law, an earlier lawsuit bars a later one when

1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claim[ ] in the second matter [is] based upon the same cause of action involved in the earlier proceeding.

Grausz, 321 F.3d at 472.  All three of these requirements are satisfied with respect to this litigation.

First, Lazaridis sued Cullen in the 2007 litigation, just as he is attempting to do in the present case, which satisfies the "identity of the parties" requirement for *res judicata* as to Cullen.

13

Second, the requirement of a "valid final judgment on the merits by a court of competent jurisdiction" is also satisfied by the outcome of the 2007 lawsuit.  That earlier case was dismissed by Judge Davis, and because his dismissal order did not state otherwise, it "operates as an adjudication on the merits."  See Rule 41(b), F.R.C.P. and Lazaridis v. Wehmer, No. 07-3112-AMD (D. Md.), ECF Entry No. 26 (March 31, 2008).  See also, e.g., Alexander v. District Court of Maryland for Charles County, 2008 WL 6124449 * 3 (D. Md., March 20, 2008); aff'd 2008 WL 6124449 (4th Cir. 2009).  As such, it is preclusive against the re-filing of the same suit in the same federal court, as Lazaridis is attempting to do here with respect to Cullen.

In addition, Lazaridis appealed Judge Davis's ruling to the Fourth Circuit, but his appeal ultimately terminated because he failed to file a supporting brief, which prompted that court to dismiss for "lack of prosecution."  See Civil Action No. 07-3112-AMD (D. Md.), ECF Docket Entry No. 33.  A dismissal for lack of prosecution, such as for failing to file a brief or make other required submission, constitutes a judgment on the merits under federal law.  Grasty v. United States Patent and Trademark Office, 211 Fed. App'x 952, 954, 2007 WL 46059 at * 2 (Fed. Cir. (Pa.) 2007) (failure to pay appeal docketing fee is a failure to prosecute, and resultant dismissal of appeal operates as an adjudication on the merits); Lim v. Central DuPage Hospital, 972 F.2d 758, 763-64 (7th Cir. 1992) (res judicata defense sustained in part by the fact that "[a]lthough he [plaintiff] filed his appeal, he failed to submit an appellate brief, thus resulting in our dismissal of his appeal for failure to prosecute it"); cert. denied, 507 U.S. 987 (1993).  See also Plant v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal . . . for failure to prosecute [ ] as a judgment on the merits."); Bragg v. Flint Board of Education, 570 F.3d 775, 776 (6th Cir. 2009)(same); Landon v. Hunt, 977 F.2d 829, 833 (3rd Cir. 1992) (same); Zeno v. United States, 2009 WL 4910050 at * 5 (D.

14

Md., Dec. 11, 2009) (abandonment of a case on appeal renders even a non-final district court judgment a full adjudication on the merits for purposes of *res judicata*).

Third, the requirement that the current litigation involve the same "cause[s] of action or claim[s]" as did the original 2007 lawsuit is also met.  Claims are considered part of the same cause of action, when

> the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment. . . . The word "transaction" in the claim preclusion context connotes a natural grouping or common nucleus of operative facts . . . Factors to  be considered in deciding whether the facts of the current and prior claims are so woven  together that they constitute a single claim are their relatedness in time, space, origin, or motivation and whether, taken together, they form a convenient unit for trial purposes

Bouchat v. The Bon-Ton Department Stores, 506 F3d. 315, 327 (4th Cir. 2007); cert. denied, 553 U.S. 1014 (2008).  This assessment is a pragmatic one.  Zeno, 2009 WL 4910050 at * 6.  Claims may arise out of the same transaction "even if they involve different harms or different theories or measures of relief."  Id.  Newly alleged acts do not create a new cause of action if they do not give rise to relief against a defendant that was unavailable to the plaintiff in the earlier action.  Alexander, 2008 WL 61224449 at * 5.  In addition, preclusive effect is given not only to claims raised in the earlier action, but also to claims that could have been raised.  Zeno, 2009 WL 4910050 at *6; Alexander, 2008 WL 61224449 at * 5.

In this lawsuit, as in his 2007 suit, Lazaridis (1) has challenged the constitutionality of the UCCJEA for its alleged "due process" defects, (2) has challenged on V.L.'s behalf any application of the UCCJEA to her, contending that her custody situation is exclusively governed by European law, consistent with due process and U.N. convention, and (3) has asserted that in representing Lazaridis's ex-wife in the Cecil County proceedings, Cullen has somehow engaged in "malpractice" in relation to Lazaridis and V.L., has also asserted erroneous contentions that constitute fraud, and has engaged in

such conduct in a conspiracy with Lazaridis's ex-wife.  In fact, most of the allegations in the current

complaint simply track earlier allegations verbatim although with some numbering and arrangement

changes.  Identical relief is sought against Cullen in both actions.  Compare 2007 Comp. at ¶s 1-3

(Exhibit 10) with 2010 Comp. at ¶s 1-3 and 8 (Exhibit 11).

Moreover, the same transaction and its underlying operative facts -- i.e. the UCCJEA registration

proceeding sought by Lazaridis's parents in Cecil County and its anticipated alleged impact on Lazaridis

and V.L. -- are at the heart of both his 2007 and 2010 federal complaints.  The only development in

those proceedings between the time when Lazaridis's 2007 lawsuit was dismissed and now is that the

Greek visitation order that Lazaridis's father sought to register in 2007 has actually been registered

pursuant to the Court of Special Appeals' mandate in the appeal filed by Lazaridis's father.  See

Lazaridis v. Wehmer, App. No. 7, (Md.  Ct. Sp. App., February 19, 2009), Slip Op. at 11. Lazaridis's

original 2007 lawsuit clearly contemplated and fully addressed that anticipated registration and its

consequences as the crux of the matter, with Lazaridis having had a full opportunity to develop any and

all related claims pertaining to such anticipated registration.

Lazaridis contends that after Judge Davis issued his March 31, 2008 decision, applying the

fugitive disentitlement doctrine to dismiss Lazaridis's original claims, two subsequent events supposedly

have undermined the validity of that ruling.  First, after Judge Davis had ruled, the Third Circuit

concluded that the fugitive disentitlement doctrine did not warrant dismissal of Lazaridis's 2006 lawsuit

attacking the validity of Delaware's version of the UCCJEA.  See Lazaridis v. Wehmer, 2008 WL

3823906 (3d Cir., Aug. 15, 2008).[11]  See 2010 Comp. ¶ 4.  Second, the Michigan warrant for

---

[11]   The Third Circuit's decision was at variance with a Sixth Circuit decision, and two Michigan federal district court decisions finding the fugitive disentitlement doctrine to be applicable to Lazaridis.  See Lazaridis v. Donker, Civ. No. 1:07-fp-376, 2007 WL 2029645 (S. D. Mich., July 11, 2007); Lazaridis v. Herald Co., 5:05-CV-111, 2006 WL 222839 (W. D. Mich. Jan. 26, 2006), aff'd, No. 06-1830 (6th Cir. March 13, 2007).

Lazaridis's arrest, which has led to his fugitive status, allegedly was procured by Wehmer on the basis

of a French custody determination in 2004, which Lazeridis claims was determined just this year by the

Court of Appeal of Lyon to have been invalid for lack of jurisdiction. Id. at ¶ 6.

    Neither of these asserted facts makes any difference for purposes of the preclusion of Lazaridis's

claims. Mere alleged changes in circumstances, supposedly supplying a litigant with a better basis to

press a claim now than in an earlier suit, do not prevent the bar of *res judicata*, even if the earlier claim

appears meritorious in retrospect, so long as the litigant procedurally had a fair opportunity to assert it

earlier. Illustrative of this principle is the Seventh Circuit's decision in Lim v. Central DuPage Hospital,

972 F.2d 758 (7th Cir. 1992); cert. denied, 507 U.S. 987 (1993) in which the plaintiff sought to escape

*res judicata* because of an intervening change of law that would have impacted an antitrust claim he had

attempted to assert in an earlier suit. The Seventh Circuit rejected the changed circumstances argument

under the federal common law of *res judicata*, stating

> Dr. Lim has failed to demonstrate that a change in law after the entry of judgment creates
> an exception to the application of federal res judicata law . . . The requirement that a    party
> have a full and fair opportunity to litigate an issue before res judicata may apply   relates to the
> procedural opportunity rather than to a judicial determination of the merits   of the issue.

Id. at 763 (emphasis added). The court noted that the plaintiff had the procedural ability to assert his

claim, but that he had knowingly forfeited it in part because after "he filed his appeal, he failed to submit

an appellate brief, thus resulting in our dismissal of his appeal for failure to prosecute." Id.

Analogously, Lazaridis has alleged no procedural inability whatever to present his claims in 2007; and

he ultimately lost the 2007 litigation from his own procedural default before the Fourth Circuit.

    Moreover, the specific developments Lazaridis now seeks to rely upon pertain to matters he was

fully able to argue in the 2007 case. After the Fourth Circuit had dismissed his appeal, Lazaridis

submitted the 2008 Third Circuit decision to Judge Davis and moved under F. R. Civ. Pro. 60 to vacate

the judgment in the case.  Judge Davis rejected the motion, and Lazaridis failed to appeal that ruling,

thus for a second time forfeiting an asserted claim in the 2007 case through failure properly to appeal.

He also easily could have presented to the Fourth Circuit the arguments he made before the Third

Circuit about fugitive disentitlement, since the Third Circuit appeal had been fully briefed by May 8,

2008,[12] well before his Fourth Circuit brief was due on June 2, 2008.

The other new development Lazaridis seeks to rely on relates to matters he also was able to

assert in 2007.  Lazaridis alleges that the June 29, 2004 French custody order has been undermined by a

recent 2010 decision of the Court of Appeals of Lyon, finding that as of May 27, 2004, no jurisdiction

existed over the Lazaridises for purposes of granting them a French divorce (2010 Comp. ¶s 6 and 28),

and which in turn allegedly vitiates any subsequent French awarding of custody on June 29, 2004.   But

the jurisdictional validity of the 2004 custody order is a point he has been able to raise, and has raised,

repeatedly for many years.  Indeed, in opposing dismissal of his 2007 lawsuit, Lazaridis submitted to the

district court an extensive affidavit by him, in an earlier New York lawsuit,[13] asserting that the 2004

French decree had been improperly issued on multiple grounds.  See Exhibit H thereto filed by Lazaridis

on March 10, 2008 at ¶s 9-44, beginning with the subtitle "French Orders Issued In Default of Notice

and Appearance." Having cut off any opportunity to pursue the point at all in Maryland by letting his

2007 lawsuit lapse, he cannot now, contrary to the interests of finality and judicial economy, be

permitted suddenly to revive it simply because he thinks there has been a collateral ruling in another

country favorable to his position.

---

[12] See Lazaridis v. Wehmer, Case No. 07-3572 (3d Cir.), ECF Docket Entry No. 21 (May 8, 2008) noting completion of Third Circuit briefing by Lazaridis as of May 8 and Lazaridis v. Wehmer, Case No. 08-1503 (4th Cir.), ECF Docket Entry No. 3 (May 7, 2008) first establishing the briefing schedule in the Fourth Circuit on May 7.
[13] See Lazaridis v. Drei, Civ. No. 1:05-cv-01193-FJS-DRH (N.D.N.Y.).

Furthermore, aside from attacking the French custody decree in the 2007 case before this Court and in the New York litigation, Lazaridis also had done so in the UCCJEA proceeding brought by his former wife in Delaware.  See Letsos v. Warren, 2006 WL 1640218 (Sup. Ct. Del., 2006).  One of his primary arguments was that the French court had had no jurisdiction to issue it, see Letsos at * 1 - * 2, but the Delaware Supreme Court concluded to the contrary. Id. at * 3. ("We find Father's present claims challenging the jurisdiction of the French court to be unavailing.").  Indeed, that court took notice of the fact that Lazaridis had acknowledged a sufficient basis for French jurisdiction in an earlier proceeding he had initiated in Delaware.  Id.

When Lazaridis attempted one year later yet again to make the same argument in seeking to reopen the earlier UCCJEA proceeding, the Delaware Family Court ruled that the earlier proceeding was preclusive on issue of the validity of the 2004 French decree:

> This Court is not at liberty to reopen debate regarding the registration of the June 29, 2004 French Custody Order.  Father's objections were aired in his Motion to Vacate, were stated again in his Motion for Reargument, and were heard a third time, by the Supreme Court of Delaware. . . Father is barred by *res judicata* from readdressing the matter.

T.W. v. E.L., 2007 WL 4793123 at *2 (Del. Fam. Ct. 2007).  On appeal yet again to the Supreme Court of Delaware, that court concurred:

> The judgment Father seeks to reopen is the Family Court's registration of a child custody  order entered by a French court in 2004. The issues in this case are the same issues raised and resolved against Father in a 2006 appeal filed in this Court. The Family Court did not err in holding that Father's second motion to reopen was barred by the doctrine of *res judicata,*  which prohibits relitigation of issues previously resolved by a court

Little v. White, 959 A.2d 28, 2008 WL 4216354 at * 1 (Del. 2008).

In his most recent federal case in Delaware, raising the same complaints about the Delaware UCCJEA as he has made in this case regarding Maryland's UCCJEA, he attempted once more to attack the 2004 French custody order, but again was barred by *res judicata* principles from doing so:

Plaintiff is barred under the doctrine of res judicata to relitigate his claims relating to the registration of the June 29, 2004 French custody order. . . To the extent plaintiff seeks to raise additional claims alleging constitutional violations that could have been raised in his previous action, those claims are also barred.  Notably, plaintiff unsuccessfully attempted to relitigate the registration of the June 29, 2004 custody order in 2007 when he moved to reopen the [Letsos] judgment in Family Court.  The Family Court rejected his attempt as  barred by the doctrine of res judicata and the Delaware Supreme Court affirmed stating, "the issues in this case are the same issues raised and resolved against plaintiff in a 2006 appeal filed in this Court."

Lazaridis v. Wehmer et al., 2008 WL 4758551 at * 5 (D. Del., October 28, 2008); aff'd, 591 F.3d 666

(3d Cir. 2010)[14].

Under the doctrine of *res judicata*, these earlier upholdings of the 2004 French order and

affirmations of French jurisdiction are binding on Lazaridis in favor Wehmer, who was the opposing

party.  And as Wehmer's attorney in later litigation on the same subject, Cullen also necessarily was

entitled to rely on the preclusive effect of those earlier fact-findings and to represent them as the

operative facts in his subsequent advocacy of Wehmer's rights in Cecil County.  Consequently, any

claim by Lazaridis that Cullen fraudulently misrepresented to the circuit judge that the French court had

been competent to rule, or that Wehmer had custody, is also precluded.  See Am. Comp.¶ 82.[15]

Lazaridis contends that the alleged 2010 French appellate ruling he cites undercuts the earlier

2004 French custody order favoring Wehmer, and that in turn, the various American court cases he has

lost, which he claims relied on the 2004 custody order, were "issued per incuriam" and cannot now be

---

[14]   To the extent that any of these earlier cases are deemed to have involved different causes of action and claims than those raised in Lazaridis's current Complaint, the determination in those cases of the validity of the June 29, 2004 custody order still remains binding upon Lazaridis based on the doctrine of collateral estoppel. Zeno v. United States, 2009 WL 4190050 at * 6 (D. Md., Dec. 11, 2009).

[15]   While Cullen's role as advocate for Wehmer fully justifies his ability to assert the preclusive effect of fact-findings in the earlier Delaware litigation in defense of Lazaridis's attempted claims against him for alleged misrepresentations in the Cecil County proceedings, Cullen also is protected by the *res judicata* effect of the earlier Delaware litigation on the alternative ground that he is a party in privity with Wehmer, as lawyers generally are found to be with their clients.  See, e.g., Weinberger v. Tucker, 510 F.3d 486,492-93 (4th Cir. 2007) ("Courts have held that the attorney-client relationship itself establishes privity."); cert. denied, 128 S.Ct. 2938 (2008); accord Pincus v. the Law Offices of Erskine & Fleisher, 2010 WL 286790 at * 2 n.1 (S. D. Fla., Jan. 19, 2010).  The doctrine of *res judicata* and collateral estoppel renders earlier proceedings preclusive with respect to both the parties to such proceedings and those in privity with them.

properly considered. (2010 Comp. at ¶s 6 and 30).  Lazaridis does not attempt to explain his "*per incuriam*" reasoning.  The term "*per incuriam*" literally means "through inadvertence." Blacks Law Dictionary 1293 (rev. 4th ed. 1968.)  It refers to an exception recognized under English and Commonwealth law to the general principle of *stare decisis*, and permits a court to deny precedential effect of a decision in later similar cases if the earlier decision was wrongly reached through an inadvertent overlooking of a contrary controlling rule of law or a governing statute requiring a different result.  Roger A. Shiner et al., Treatise of Legal Philosophy and General Jurisprudence, Vol. 3 at 35 (2005).  See, e.g., People v. Nicks, 342 N.E.2d 360, 364 (Ill. 1976)(dissenting opinion)( "[A] case in which a governing statute is not called to the attention of the court which decided the case is the classic example of what is known as a 'judgment per incuriam.' (See Young v. Bristol Aeroplane Co., (1944) 1 K.B. 718, (1944) 2 All E.R. 293.)")

The *per incuriam* exception is not a doctrine that appears to have been incorporated into American state or federal law; and even in foreign jurisdictions where it is recognized, "cases of deeming a precedent to be *per incuriam* are exceedingly rare." Shiner et al., supra, at 35.   Moreover, it would have no effect on any American court's reliance on the 2004 French custody order, which involves the narrower principle of *res judicata* -- i.e. giving preclusive effect of prior litigation between the same parties -- rather than *stare decisis*, which involves more broadly applying precedents by analogy to different parties in later cases presenting similar circumstances. Id.   There is no issue of the *stare decisis* effect of precedent, or inadvertent overlooking of any statute or line of existing authority, which has been or could be raised by Lazaridis.  As indicated above, any supposed change of circumstances occasioned by the alleged 2010 French appellate ruling makes no difference for purposes of *res judicata*.

Moreover, it was not some erroneous belief about the merits of the 2004 French decree that led to the decisions by Judge Davis, and several other federal judges, to dismiss Lazardis's claims because of his fugitive status.[16]  Rather, Lazaridis had resisted returning to Michigan, in defiance of a warrant in proceedings that would have allowed a Michigan court to consider his arguments about the French order, whatever their merits.  It was his flight and unwillingness to have returned there to state his case that was the offense.  Any recent ruling allegedly favorable to him in France, or possible withdrawal of the warrant in Michigan, does not retroactively change his status as a fugitive or undermine rulings based on it in the past, including by Judge Davis.

Lazaridis's specific complaints about Cullen in this case are also ones that he knew about and could have litigated, and that he did litigate in the 2007 action.  Lazaridis's current allegations about Cullen's supposedly improper objections in the Cecil County registration proceeding (2010 Comp. ¶ 81) are identical to those Lazaridis made in the 2007 Complaint (2007 Comp. ¶ 84).  Similarly, Cullen's supposedly "fraudulent" representations in the Cecil County proceedings -- about the 2004 French custody order being valid, Wehmer being entitled to custody of V.L., and Lazaridis being an abductor (2010 Comp. ¶ 82) -- were contentions that Lazaridis was freely able to, and attempted to, contest in the 2007 suit in this Court, as well as in other courts.   In fact, a transcript reflecting Cullen's argument referencing the French orders was attached as Exhibit 11 at p. 3 to Cullen's February 11, 2008 Motion to Dismiss the 2007 case, clearly inviting and enabling then whatever claim, if any, Lazaridis thought he could base upon it.  See Lazaridis v. Wehmer, Civil Action No. 07-3112-AMD (D. Md.), ECF Entry No. 13, Ex. 11 at 3 (Feb. 20, 2008).

---

[16] As Lazaridis concedes, the June 29, 2004 French custody order was merely "referenced" and "referred to" by this Court in Lazaridis v. Wehmer, Civ. No. AMD 07-3112 (see 2010 Comp. ¶s 6 and ¶ 29) and was background material.  The validity of that custody order was not stated as being, nor is it, a necessary factual premise of Judge Davis's decision.

In sum, the preclusive effect of the dismissal of the earlier 2007 lawsuit before this Court, and earlier dismissals in Delaware, could not be clearer and should relieve Cullen from the unwarranted burdens of Lazaridis's ongoing harassment and relieve this Court of his repetitive frivolous claims

2.      Lazaridis Has No Standing to Sue Because He Does Not Face Imminent Injury.

Lazaridis's claims also must be dismissed because of his lack of standing to assert them.  In order to have standing to sue Cullen in this court, Lazaridis must assert claims against him that satisfy the "case or controversy" requirement of Article III of the federal constitution.  Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 472 (1982) (plaintiff must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and that the injury can be traced to the challenged action . . . and is likely to be redressed by a favorable decisions.")  To satisfy that requirement, Lazaridis must "demonstrate that (1) he has suffered an actual or threatened injury, (2) a causal connection exists between the injury complained of and the challenged action; and (3) the injury can be redressed by a favorable decision."  See, e.g., Burke v. City of Charleston, 139 F.3d 401, 405 (4th Cir. 1998).   Moreover, he must show an injury which is concrete and particularized as well as actual or imminent rather than conjectural or hypothetical.  Id.

Alleged threats of injury arising from uncertain and contingent events in the future are insufficient.   O'Shea v. Littleton, 414 U.S. 488, 497 (1974) (injury anticipated by the claimants if they violated the law and if they were brought before particular judicial officers was too hypothetical); Whitmore v. Arkansas, 495 U.S. 149, 157-58 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be 'certainly impending' to constitute injury in fact.") (emphasis added); City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (the

complaint must show that plaintiff "has sustained or *is immediately* in danger of sustaining some direct injury") (emphasis added).

Lazaridis's latest Complaint, similarly to his 2007 Complaint, cites no concrete injury or threat of injury satisfying these standards.   The Cecil County proceedings that he complains about, which resulted in the registration of the Greek visitation order dated July 18, 2007, were commenced and pursued through the voluntary actions of Lazaridis's own parents, with his welfare obviously in mind. Lazaridis also had statutory rights as an interested party in the registration proceeding, with the right to notice and the ability to intervene and object to his parents' proceeding, which he failed to exercise.  See MD. CODE ANN. Family Law Article, §§ 9-5.305 (a)(3) and (b)(2) (providing for custodial parent to be notified by the court about any proposed registration and given the opportunity to contest it.)  The resulting registration of the Greek visitation order not only was initiated and sought by the voluntary actions of the Lazaridis family, but in all events has resulted only in a minor ministerial act by the Circuit Court, in merely taking official cognizance of that Greek order.  See Letsos v. Warren, 910 A.2d 120, 2006 WL 1640218 at *3 (Sup. Ct. Del., June 12, 2006) ("[R]egistration is a ministerial act.")  The Cecil County proceeding has not adversely affected anyone.

Lazaridis's Complaint attempts to suggest that some future injury might result from the registration, but he fails to show any concrete, imminent threat.  While he quotes a transcript excerpt from the remand hearing in Cecil County on September 11, 2009, during which Cullen discussed possibly seeking an order from that court to compel Lazaridis's compliance with the newly-registered visitation order, the hearing he quotes from occurred over a year ago.  Lazaridis cites no action by either Cullen or the Cecil County Court in the meantime either pursuing that possibility or otherwise affecting Lazaridis's rights.  His Complaint also vaguely alleges that some state enforcement action supposedly

could grow out of registration proceedings (2010 Comp. at ¶ 49), but fails to show how this is so or that there is any pending threat of it that provides him with standing.

Even if an enforcement action of some sort were to develop out of those proceedings in Maryland, Lazaridis's complaint fails to show how either he or V.L. would be injured by it. They reside in Greece, and the 2010 complaint stresses their lack of contact with Maryland. (2010 Comp. ¶s 9, 41). Enforcement in Maryland, therefore, would be inconsequential. Moreover, the two Greek orders which were the subject of the Cecil County proceedings are ones that Lazaridis contends are valid (2010 Comp. ¶s 22-24 and ¶ 26 and 2007 Comp.¶s 26, 30-31) and which regulate the parties' rights in Greece. Yet inexplicably, Lazaridis's principal contention now is that registration of the visitation order in Maryland, as instigated by his father, is unlawful because Maryland has no jurisdiction (id. at ¶s 56- 63); and he seeks a declaration of the illegality of Circuit Court Judge Thompson's registration order for that reason. (2010 Comp. ¶ 7, 51, 63.)   How a Maryland enforcement action, based on a Greek visitation order which his own father submitted for registration in Maryland, would adversely affect him is nowhere explained.

In addition, Lazaridis has failed to explain how Cullen's alleged misconduct as Wehmer's advocate, as described in Count Three, could possibly have injured him, given its consistency with Lazaridis's own alleged objectives in this case. Lararidis's 2010 Complaint vehemently opposes on jurisdictional grounds the registration of foreign custody orders in Maryland under the UCCJEA, including the Greek visitation order that ultimately was registered by his father. (See 2010 Comp. at ¶s 51, 57, 59, 63) The supposedly improper conduct Lazaridis alleges on Cullen's part, however, would have had the effect of blocking such registration, i.e. the very same outcome Lazaridis now repeatedly endorses. Furthermore, one form of Cullen's supposed alleged misconduct is his asserting defenses not

textually included in the UCCJEA (2010 Comp. ¶ 81).  But if accepted by the Cecil County Court, they would have terminated the proceeding without registration, consistent with Lazaridis's own avowed objective in this action.  Indeed, one of those supposedly "excessive" defenses raised by Cullen -- lack of jurisdiction by the Cecil County Court (id.) -- is identical to Lazaridis's own jurisdictional objection to the Cecil County proceeding, as is repeatedly asserted in his current federal Complaint. ( Id. at ¶s 41, 42, 46, 47, 51, 53, 58, 59, 62 ).[17]  The other forms of such alleged misconduct by Cullen -- his "fraudulently" contending that Wehmer had been awarded custody, that a French court was competent to do so, and that Lazaridis improperly had departed with V.L. -- similarly were all focused on blocking registration.  In short, Cullen's alleged actions were not injurious to Lazaridis but in fact fully in harmony with Lazaridis's own alleged desires, as stated in his topsy-turvy Complaint.

Lazaridis has averred in his new Complaint that "as the direct and proximate result of the hereinabove acts and omissions of the private defendants, plaintiff is suffering financial injury and has incurred costs in addressing the vexatious litigation initiated by them, their fraud and conspiracy amongst themselves and others." 2010 Comp ¶ 83.  If meant in reference to Cullen, this injury allegation is nonsensical, since Cullen is not alleged to have initiated any litigation against Lazaridis, but merely to have defended Wehmer's interest as a respondent in Cecil County.  Moreover, as regards the Cecil County case, which is the focus of Lazaridis's Complaint, it was his parents who brought the litigation and were the adverse parties to Wehmer in that registration proceeding. (See petitions, transcript and appellate decisions cited supra in the Cecil County registration proceedings, and 2010 Comp. ¶ 32 denying that Lazaridis was a party to that proceeding.)   Any costs of the Cecil County proceeding do not constitute an injury to him, because they are not his legal obligation, but are those of

---

[17]   See also Cecil County Circuit Court Transcript at p. 7-8 (Exhibit 12), where Cullen argued that Maryland had no jurisdiction.

his parents.  Whatever, if any, other costs or other injury he has incurred that is attributable to Cullen is nowhere stated or explained.

Consequently, Lazaridis's 2010 Complaint fails in multiple respects to show a "facially plausible" claim of injury inflicted by Cullen or to state any actionable case or controversy involving him.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

3.    Lazaridis Has No Standing to Assert Rights on Behalf of his Daughter, V.L.

While the absence of injury undermines Lazaridis's standing to assert any of the claims raised in his lawsuit, there are additional reasons that preclude his standing to pursue the claims he asserts in both Counts One and Two, insofar as they purport to be brought on behalf of his daughter V.L.  Under the Federal Rules, to bring such a claim, Lazaridis would have to show either that he is an attorney with authorization from his daughter to assert her interest or that he had rights of general guardianship under Maryland law sufficient to pursue representative claims for her.

Two different federal courts recently have relied on these principles to dismiss claims that Lazaridis has attempted to bring on behalf of V.L.  In January, 2010 the Third Circuit dismissed a claim by Lazaridis virtually identical to that in Count Two of this case because Lazaridis had no authority to sue in a representative capacity:

> Lazaridis's second claim, which he seeks to reopen in the name of his daughter, asserts that the registration of the French orders violated his daughter's rights because the  Delaware courts did not apply Greek law, the United Nations Convention on the Rights of the Child (which the United States has not ratified), or appropriately apply the "best interest of the child" standard under Delaware law. Because Lazaridis may not represent his child in federal court as a non-lawyer parent, Osei-Afriyie v. Medical College of Pennsylvania, 937 F.2d 876, 877 (3d Cir.1991), we will dismiss the appeal as to this claim.

27

_Lazaridis v. Wehmer_, 591 F.3d 666, 672 (3d Cir. 2010).   In May, 2010, the United States District Court

for the District of Columbia reached the same conclusion with respect to a different claim Lazaridis had

attempted to bring on V.L.'s behalf:

> DOL argues correctly that Mr. Lazaridis lacks standing to sue on V.L.'s behalf because    he is
> neither an attorney nor V.L.'s duly appointed representative as defined by Federal Rule of
> Civil Procedure 17(c)(1).  Pursuant to 28 U.S.C. § 1654, "the parties [in federal court] may
> plead and conduct their own cases personally or by counsel as, by the rules of such courts,
> respectively, are permitted to manage and conduct causes therein." In other words a lay   person
> such as Mr. Lazaridis can appear pro se but is not qualified to appear as counsel for others.
> _Georgiades v. Martin-Trigona_, 729 F.2d 831, 834 (D.C. Cir. 1984); accord _Delaney v. District of
> Columbia_, 612 F. Supp. 2d 38, 41 (D.D.C. 2009).  Moreover, Mr Lazaridis has not established
> that he is V.L.'s general guardian" or "like a fiduciary," Fed. R. Civ. P. 17(c)(1), under    District
> of Columbia law.  _See Brimhall v. Simmons_, 338 F.2d 702, 706 (6th Cir. 1964) (concluding that
> under Fed.R. Civ. P. 17(b) and (c), "the capacity to sue by one acting in a  representative
> capacity shall be determined by the law of the state in which the district court is held.)
> Given the unsettled nature of the custody dispute over V.L. it would be wholly inappropriate
> to recognize either parent as an appropriate guardian for the purpose of resolving this case.
> _Foretich v. Glamous_, 741 F. Supp. 247, 250 (D.D.C. 1990)

_Lazaridis v. United States Department of Justice_, 713 F. Supp. 2d 64, 67 (D.D.C. 2010).   Fourth Circuit

law commands the same result here.  Myers v. Loudoun County Public Schools, 418 F.3d 395, 401 (4th

Cir. 2005) ("We . . . join the vast majority of our sister circuits in holding that non-attorney parents

generally may not litigate the claims of their minor children in federal court.")  Consistent with these

authorities, the claims that Lazaridis seeks to bring as V.L.'s representative in Counts One and Two

similarly must be dismissed.

4.    Lazaridis's Complaint Fails to State a Claim Against Cullen in Counts One and Two
      Because Cullen Is Not a State Actor.

Lazaridis alleges in Count One of his Complaint that he and his daughter have been or will be

subjected to due process deprivations supposedly built into the UCCJEA registration process and into

enforcement proceedings brought under it, which he speculates that Cullen might bring.  2010 Comp. ¶s

64 and 66.  In Count Two, Lazaridis claims that UCCJEA proceedings involving V.L. deprive her of due

process by subjecting her to Maryland law rather than European law, which he contends should exclusively govern the circumstances of her custody. (2010 Comp. ¶s 73-76).

While Lazaridis does not identify the specific legal basis on which he purports to sue in Counts One and Two, the only recognized claims that he conceivably might attempt to assert would be under 42 U.S.C. § 1983, or possibly directly under the 14th Amendment, for some novel deprivation of due process. Section 1983 makes it unlawful for any person under color of state law either to subject, or cause the subjection of, any citizen of the United States or other person within its jurisdiction to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

Any such attempted claims against Cullen, however, would be unavailing because deprivations of due process are only actionable against state actors.  Freilich v. Board of Directors of Upper Chesapeake Health Inc., 142 F. Supp. 2d 679, 685 (D. Md. 2001) (noting the convergence in § 1983 litigation of "the state action requirement for Fourteenth Amendment violation and 'under color of state law requirement.'"); aff'd 313 F.3d 205 (4th Cir. 2002).  Private attorneys such as Cullen do not become state actors merely by making use of the state court system.  Fleming v. Asbill, 42 F.3d 886, 890 (4th Cir. 1994).

This conclusion is all the more warranted for lawyers who have not even instigated litigation or sought judicial remedies, but rather, as has Cullen, merely asserted legal positions and arguments on behalf of their clients in response to litigation initiated by others.  See, e.g., Bennett v. Paasche, 1994 U.S. Dist. Lexis 10244 at * 7 (E. D. Mich. 1994):

> She [Mrs. Paasche] is only involved in this suit as a result of her opposition to Plaintiff's petition to commence probate proceedings regarding her late husband's estate. It is well-settled that mere participating in private litigation does not constitute state action for purposes of § 1983. . . Similarly with respect to Defendant Connolly, Mrs. Paasche's attorney, simply providing legal representation in private litigation, does not constitute state action for purposes of liability under § 1983.

Cf. Ward v. Gee, 1993 WL 410357 at * 2 (4th Cir., Oct. 13, 1993) ("Defense attorneys do not act under color of state law and are therefore not amenable to suit under § 1983."). Accusations of purported lapses in an attorney's duty, such as by improper conduct toward an opponent, in no way alters the private status of counsel. Dolon v. Smith, 662 F. Supp. 352, 360 (D. Md. 1986) (Notwithstanding accusations of improprieties by counsel, "the conduct of an attorney acting his professional capacity while representing his client does not constitute action under color of state law. . ."); aff'd, 820 F.2d 1219 (4th Cir. 1987).

The Third Circuit, noting the absence of this state action element, recently affirmed dismissal of Lazaridis's similar constitutional claims against private attorneys in Delaware for this reason:

> A claim brought under § 1983 can only be sustained if the defendant has deprived the plaintiff of a federal constitutional or statutory right while acting under color of state law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) Lazaridis has failed to set forth facts suggesting that the defendants are state actors or acted under color of state law. Philip Morris Inc., 250 F.3d 789, 806 (3d Cir.2001). Accordingly, this claim has no legal merit and the District Court appropriately dismissed it under 28 U.S.C. § 1915.

Lazeridis v. Wehmer, 591 F.3d 666, 672 (3d Cir. 2010). Because all Cullen is alleged to have done is to respond as Wehmer's pro bono advocate in proceedings initiated by Lazaridis's parents in Cecil County, Lazaridis's attempted claim against Cullen in Counts One and Two must similarly be dismissed.

5.   Lazaridis's Allegations in Counts One and Two Are Based on Faulty Legal Premises Rejected by Other Courts.

Lazaridis's claims in Count One and Two are further defective because each is based on a faulty legal premise. In Count One, Lazaridis contends that Maryland's UCCJEA is unconstitutional because it provides for judicial proceedings in Maryland without there being a legitimate basis for exercising jurisdiction over the interested parties and is too summary in its procedure. Lazaridis made these same arguments before the Supreme Court of Delaware in Letsos v. Warren, 2006 WL 1640218, 901 A.2d

120 (Table) (2006).  While the court refused to rule on these points because they had not been raised

below, it noted in persuasive dicta that Lazaridis misunderstood the restricted ministerial nature of

UCCJEA proceedings and the limited jurisdictional and procedural requirements for bringing them:

> Father's first two claims constitute a challenge to the constitutionality of the UCCJEA.
> Specifically, Father argues that registration of the order of the French court in Delaware  has
> unfairly "forced him to defend [himself] in a Delaware forum" and that his constitutional right to
> due process has been violated because he has no "minimum contacts" with the State of
> Delaware. Father concedes that he never presented those claims to the Family Court in the first
> instance. As such, we decline to consider them in this appeal. We note, however, that the claims
> appear to be based upon a misunderstanding of the rationale underlying the UCCJEA.
> Registration of a foreign custody order in Delaware does not mean that the Delaware Family
> Court has assumed jurisdiction over the matter for all purposes. Rather, registration is a
> ministerial act for purposes of enforcement of the order of the foreign court, which retains
> jurisdiction over the matter. The legal authority cited by Father is, thus, inapposite in the  present
> circumstances.

2006 WL 1640219 at * 2 (emphasis added, footnotes omitted).

In Count 2 of his current Complaint, Lazaridis further contends that the UCCJEA is

unconstitutional because it overshadows and conflicts with "fundamental rights" that VL enjoys as a

Greek citizen under the United Nations Convention on Rights of the Child and various European

Council Regulations.  As he conceded, however, in his 2007 Complaint at ¶ 73 (and carefully now

sidesteps in his 2010 Complaint), that convention has not been ratified by the United States.  See

Lazaridis v. Wehmer, 591 F.3d 671-72 (3d Cir. 2010);  http://en.wikipedia.org/wiki/US ratification of

the_Convention_ on_the_Rights_of_the_Child. (last visited on Dec. 21, 2010).  It is therefore not

binding on American courts.  There also is no evident basis for concluding that European Council

Regulations he cites are applicable or authoritative in relation to UCCJEA proceedings.  Nor does he

allege otherwise any "facially plausible" basis for finding them controlling for purposes of registering

custody orders under the UCCJEA.  For these reasons, his allegations properly were found to be

frivolous in <u>Lazaridis v. Wehmer</u>, 2008 WL 4758551 at * 8 (D. Del., October 28, 2008); <u>aff'd</u>, 591 F.3d 666 (3d Cir. 2010).

Both of these earlier rejections of Lazaridis's theories are sound statements of the applicable law and provide further reasons for dismissing Counts One and Two.

6.   Lazaridis's Allegations in Count Three Accusing Cullen of Conspiracy, Fraud and Malpractice Fail to State Claims Against Him.

Lazaridis's attempted common law tort claims against Cullen in Count Three also are groundless.  Count Three alleges that Cullen has (1) engaged in a conspiracy to deny Lazaridis and V.L. of their due process rights by registering and/or contesting registration of foreign custody decrees in Cecil County, (2) raised improper legal grounds in contesting his parents' registration proceeding in Cecil County, and (3) fraudulently asserted to the judge in those proceedings that Lazridis had abducted V.L. from the United States, and that Wehmer was V.L.'s legal custodian, and that a French court had been competent to make such a custody ruling.

A.  Lack of Injury.  Such attempted claims against Cullen are misguided at the outset because there has been no proximately-caused injury linked to any of them, as is required for tort claims under Maryland law. <u>Seaman v. State for Use of Jeter</u>, 213 Md. 359, 366 (Md. 1957) ("It is incumbent on one who sues another in tort to plead and prove . . . damage to the plaintiff.")  As noted earlier, registration is simply ministerial and non-injurious.  <u>Letsos</u>, 901 A.2d 120, 2006 WL 1640218 at * 2.  Moreover, the same lack of injury which undermines his general standing to sue under federal law, as discussed earlier (<u>see</u> pp. 23-27, <u>supra</u>), also precludes any action in tort under state law.

In addition, Lazaridis appears to have copied his various grievances about Cullen, as set forth in the 2007 lawsuit, and indiscriminately recycled them into the 2010 lawsuit, where they make no sense in light of the final result reached in the Cecil County proceedings.  The alleged conspiracy, fraud and

malpractice by Cullen as described in the 2010 Complaint, and which tracks the same allegations in the

2007 Complaint, allegedly consist of Cullen's <u>contesting</u> attempted registration of the Greek orders by

Lazaridis's parents, through Cullen's supposedly raising improper defenses and fraudulently depicting

Wehmer as properly having custody under the competing French order of July 2004 and depicting

Lazaridis as V.L.'s abductor.[18] (2010 Comp. at ¶s 80-82).  None of these supposedly improper

contentions by Cullen, however, caused injury to anyone because those arguments ultimately did not

prevail in the Cecil County case.  Instead, consistent with the Court of Special Appeals' 2008 decision

and remand order, the Greek visitation order submitted by Lazaridis's father <u>was</u> ultimately registered

by the Cecil County trial court in September of 2009; and the other Greek order would have been

registered following the same procedures, except that Lazaridis's mother, unlike his father, failed to

pursue her case through a timely appeal.

Moreover, it is neither necessary nor proper for a federal court to exercise general corrective

oversight for alleged errors by an attorney in state civil litigation.  <u>Dolon v. Smith</u>, 662 F. Supp. 352,

360 (D. Md. 1986); <u>aff'd,</u> 820 F.2d 1219 (4th Cir. 1987).  Whatever supposed defects Lazaridis perceives

in the UCCJEA, and (contrary to fact) in Cullen's supposedly improper advocacy under it, are

grievances which could have been fully addressed in the UCCJEA proceeding itself.  Indeed, Cullen's

broad assertion of defenses in the UCCJEA litigation, which were all fairly arguable at the time and not

in the least "fraudulent" and "malpractice" as Lazaridis now claims, were in all events ultimately

addressed and circumscribed *in the registration litigation itself,* by the Court of Special Appeals'

decision in the initial appeal.  <u>See Lazaridis v. Wehmer,</u> App. No. 7, Sept. Term 2008 (Md. App.,

---

[18]  While the 2010 Complaint makes nebulous references to improper contesting <u>and registration</u> of custody orders
¶ 80, there is no allegation that Cullen ever sought to register an order.  Cullen initially contested the two
registration petitions by Lazaridis's parents and then, after remand, simply acquiesced on behalf of his client to
the registration sought by Lazaridis's father of the Greek visitation order.  <u>See</u> Transcript at 9 (Exhibit 16).

February 19, 2009), Slip Op. at 11 ("the Greek custody order shall be registered unless mother is able to prove at least one of the three things outlined in FL § 9.5-305(d)(2)(i)-(iii).")  The Cecil County case then went forward without consideration of the fuller array of defenses that Cullen initially had raised.

Apart from this global absence of injury from any of the torts Lazaridis tries to allege, each of his tort claims is also unfounded for more particularized reasons:

B.  Conspiracy.  With respect to the "conspiracy" allegations in Count Three, if they are intended to state a federal claim, its only conceivable basis again might be under § 1983 and the 14th Amendment, as a conspiracy to infringe on Lazaridis's and V.L.'s due process rights in the Cecil County proceeding.  As already noted, however, because Cullen is not a state actor, he cannot be sued for denial of due process.

Alternatively, if the conspiracy allegations are intended to state a claim under state law, they are equally defective.  Under Maryland law there is no independent tort for "civil conspiracy."  Manikhi v. Mass Transit Administration, 360 Md. 333, 360 n. 6, 758 A.2d 95, 110 n.6  (2000); Alexander & Alexander, Inc. v. Evander, 336 Md. 635, 645 n. 8, 650 A.2d 260, 265 n. 8 (1994).  Rather, a claim of conspiracy is treated simply as an allegation of joint responsibility for conduct that must be independently tortious; and any such claim of conspiracy is only properly pleaded under Maryland law within the count for that underlying tort.  Mainikhi, 330 Md. at 360, n. 6, 758 A.2d at 110 n. 6.

C.  Malpractice.  Lazaridis's attempt to characterize Cullen's alleged conduct in the Cecil County litigation as "legal malpractice," either to prop up Lazaridis's conspiracy allegations with an underlying tort, or as an independent theory of recovery, also provides no basis for a claim. Maryland adheres to "the strict rule" in attorney malpractice cases, allowing such claims only to be brought by a client who is in privity with the offending attorney, rather than some third-party outside the attorney-

client relationship.  Walpert, Smullan & Blumenthal P.A. v. George Katz, 361 Md. 645, 662-63, 762

A.2d 582, 591 (2000), citing among other cases Flaherty v. Weinberg, 303 Md. 116, 135, 492 A.2d 618,

267 (1975).  The "sole" and "narrow" exception to this rule is to permit claims by a person whom the

client intended to be a third-party beneficiary of the work undertaken by the attorney.  Walpert, 361 Md.

at 662, 762 A.2d at 591.

     Cullen's pro bono client in the Cecil County proceedings has been Wehmer.  Lazaridis is not a

party to that attorney-client relationship, nor is he intended by Wehmer as a third-party beneficiary of

Cullen's representation of her.  To the contrary, Lazaridis has been Wehmer's constant adversary; and

imposing some tort duty on Cullen to protect interests of Lazaridis while simultaneously representing

Wehmer plainly would involve an intolerable conflict of interests.

     Nor is there any basis for a claim of alleged malpractice by V.L. against Cullen.  As shown

earlier, Lazaridis has no standing to assert the interests of V.L., nor has Lazaridis alleged any actual

injury to himself or V.L. that could be a basis for a tort claim.  In addition, Cullen is not alleged to ever

have represented V.L.; and as counsel for one parent in custody-related litigation, he owes no

professional duty to the child.  See, e.g., Pelham v. Greisheimer, 440 N.E.2d 96, 101 (Ill. 1982) ("the

attorney was hired primarily for the purpose of obtaining custody of the minor children . . . not to

represent the children");  Person v. Behnke, 611 N.E. 2d 1350, 1355  (Ill. App. 1993) ("lawyers in a

divorce proceeding owe a duty to their client - the parents - not to the children of their clients"); Lamar

v. Basbanes, 636 N.E. 2d 218, 219-20 (Mass. 1994) (because "the parents' interests may conflict with

the child's interest, we will not infer any such duty [to the child]"); G.S. v. T.S., 582 A.2d 467, 471

(Conn. App. 1990)(stating that counsel for a parent in a custody case owes no obligation to act in the

best interest of the children); see also Offenhartz v. Cohen, 562 N.Y.S. 2d 500, 501 (1990)(holding that

child who allegedly was abducted had no action in negligence against the parent's attorney.)

D. Fraud. Lazaridis's allegations of fraud by Cullen also fail to state a claim. To assert a claim

of fraud, the plaintiff must have been the recipient of misrepresentations by the defendant, must have

reasonably relied on the apparent truth of the misrepresentations and must have suffered injury as a

result. Fraud requires proof of knowingly false statements by the defendant made to the plaintiff, with

intent to defraud and on which the plaintiff has reasonably relied to his detriment. Moscarillo v.

Professional Risk Management Services, Inc., 398 Md. 529, 544, 921 A.2d 245 (2007). It also must be

pled with *specificity* and *plausibility*, consistent with both Rule 9, F. R. C. P. and the Twombly/ Iqbal

guidelines. Lazaridis has not made the necessary showings and cannot do so. Rather, he seeks to base

his fraud claim simply on the fact that he disputes contentions that Cullen made in the Cecil County

proceedings, which provides no basis for such a claim.

7.   All Lazaridis's Claims Against Cullen Are All Barred by the Judicial/Litigation Privilege.

In addition, because the tortious conduct by Cullen alleged in Counts 1-3 all involve his

courtroom communications as an advocate in a legal proceeding, all of Lazaridis's claims against him

are further precluded by privilege. (See 2010 Comp. at ¶s 35, 64, 80-82.) Tort liability for any such

communications by counsel made in the course of a judicial proceeding is foreclosed by Maryland's

absolute "judicial" or "litigation" privilege. Sodergren v. Johns Hopkins Applied Physics Lab, 138 Md.

App. 686, 773 A.2d 592 (2001) (rejecting defamation claim); Lofton v. TLC Laser Eye Centers, Inc.,

2001 WL 121809 (D. Md., Feb. 8, 2001) (dismissing defamation and intentional infliction of emotional

distress claims).

The privilege encompasses statutory tort claims under § 1983, as well as common law tort claims

of fraud and malpractice, brought against counsel by an opposing party based on alleged misstatements

to a court.  See, e.g., Loigman v. Township Committee of Middleton, 185 N.J. 566, 583-84, 889 A.2d

426 (2006) (concluding the litigation privilege precluded any liability under § 1983 arising from an

attorney's communications in court, and noting the broad applicability of privilege to common law tort

claims including fraud); Wallace v. Abell,  2008 WL 2833927 at * 3 (D. Pa. July 22, 2008) (litigation

privilege protected Assistant United States Attorneys accused of fraudulent misrepresentations in

litigation); aff'd, 318 Fed. Appx. 96 (3rd Cir. 2009);  Hugel v. Milberg, Weiss, Bershad, Hynes &

Lerach, LLP, 175 F.3d 14, 17 (1st Cir. 1999) (litigation privilege precluded a legal malpractice claim

based on accusations made by lawyers in a prior lawsuit concerning a nonparty to that earlier litigation);

Ogbin v. Fein, Such, Kahn & Shepard, PC, 2009 WL 1587896 (D. N.J. June 1, 2009) (dismissing

professional negligence claim against opposing counsel because it was based on letters protected by

litigation privilege). Otherwise, zealous representation of, and advocacy for, clients by attorneys would

likely be chilled by the constant threat of subsequent retaliatory tort claims against counsel, such as

Lazaridis repeatedly has made.

8.    Lazaridis's Claims Remain Barred Under the Fugitive Disentitlement Doctrine

Finally, Lazaridis's current lawsuit before this Court warrants dismissal, as did his 2007 action,

under the fugitive disentitlement doctrine, while the Michigan warrant against him remains

outstanding.[19]  The federal courts have equitable discretion to dismiss matters brought before them "if

the party seeking relief is a fugitive while the matter is pending." Degen v. United States, 517 U.S. 820,

824 (1996); see also Ortega-Rodriguez v. United States, 507 U.S. 234, 242 (1993) (noting that the

---

[19]   See n. 2, supra.

Supreme Court has upheld the doctrine "consistently and unequivocally.")   This doctrine was initially applied to criminal appeals, but has been extended to bar civil claims such as these in which a fugitive from criminal charges is seeking a civil remedy.  See Jaffe v. Accredited Surety and Casualty Co., Inc., 294 F.3d 584, 596 (4th Cir. 2002), which cites with approval at id. n. 9, for example, Sarlund v. Anderson, 205 F.3d 973, 974-75 (7th Cir. 2000) (district court should have invoked the doctrine in dismissing § 1983 civil rights suit by a fugitive from arrest warrants, where his location beyond control of the court could facilitate use of litigation for purposes of harassment.)

Lazaridis has been barred by other federal district courts from pursuing civil claims in view of his present fugitive status.  In Lazaridis v. Donker, 2007 WL 2029645 (W.D. Mich. 2007) (Exhibit 2), the United States District Court for the Western District of Michigan relied on the doctrine in July of 2007 to dismiss claims by Lazaridis asserting various constitutional challenges, including a due process attack upon a Michigan statute, as well as other claims for damages against attorneys.  The court noted:

> In the present action, plaintiff has . . . sued. . . various state court judges, a prosecutor, court officials, various attorneys, his ex-wife and others.Plaintiff's claims against these individuals range from violation of his rights to counsel in defense of a criminal charge, wrongful termination of parental rights, violation of procedural and substantive due process, and a claim that the outstanding arrest warrant to which he refuses to respond was issued without probable cause and in violation of the prohibition against unreasonable searches and seizures (claim 5) as well as various civil damages actions and other claims.   Plaintiff by his own admission in the complaint, remains in Greece where he is raising his daughter.  Complaint, P. 7
>
> The October 7, 2004 felony warrant for kidnapping remains outstanding.   See Complaint, P 215 and Prayer for Relief.  Lazaridis's fugitive status unquestionably has a connection to his present civil action . . . since plaintiff now seeks to have Michigan's kidnapping and custodial interference statute underlying the warrant (MCL 750.250a) declared unconstitutional and to have the  warrant itself declared unconstitutional and without effect, contending among other things that the warrant was issued on the basis of perjurious testimony and without probable cause.  Complaint, P. 146.

Id. at * 5 - * 6.

That district court was also guided by yet a third case in which Lazaridis had been barred under the doctrine from pursuing civil claims the year before, viz., Lazaridis v. Herald Company, 2006 WL 222839 (W.D. Mich. 2007), aff'd No. 1:07-fp-376 (6th Cir. 2007) (both decisions attached also Exhibit 3). In the Herald Company case, that same district court had applied the doctrine to dismiss claims by Lazaridis for libel and slander, and was upheld by the Sixth Circuit. In affirming, the Sixth Circuit noted various practical considerations against permitting him to litigate from abroad in Greece, while unwilling to return to the United States:

> His residence abroad (and his failure to retain counsel in Michigan [instead of proceeding pro se] would likely cause delays and other difficulties in the administration of his lawsuit. The defendants might be prejudiced, moreover, by the costs of taking depositions in foreign nations. See id. at 216 n. 9. Should the defendants prevail at trial, recovery of these costs from Lazaridis would be impossible or impracticable. Indeed, any judgment or order requiring action on Lazaridis's part would be unenforceable as a practical matter.

Slip Op. at 4. The Michigan federal district court cited those same concerns in dismissing Lazaridis v. Donker. Id., 2007 WL 2029645 (Exhibit 2) at * 2.

Predictably, Lazaridis still remains overseas in his enclave on Crete and is attempting again to litigate long-distance in this Court without returning to the United States. See Lazaridis's application herein to proceed in forma pauperis. If he returned, he would be subject to arrest under the still-open Michigan warrant.

Three conditions must be met to bar litigation under the fugitive disentitlement doctrine: (1) the plaintiff bringing the case must be a fugitive, (2) there must be a nexus between the plaintiff's fugitive status and the litigation being barred and (3) the bar must promote policy objectives. With respect to Lazaridis's fugitive status, he cannot deny that the Michigan warrant remains outstanding. See

declaration of Mary Dykstra, attached as Exhibit 10.[20]  The Ottawa County Prosecutor's Office

continues to believe that there is probable cause for Lazaridis's arrest under Michigan law, and that

Lazaridis is required to return to Michigan to answer the charge.  While Lazaridis argues that the

warrant arose out of the 2004 French custody order, which allegedly now has been undermined in some

way by the Court of Appeals of Lyon, his contention, even if it were accurate, is irrelevant.  A party still

"become[s] a fugitive as a result of a unilateral decision to disobey an order the party asserts to be void."

Sasson v. Shenhar, 276 Va. 611, 624 (2008) (applying fugitive disentitlement doctrine).

Lazaridis's conclusory contention in ¶ 44 of his 2010 Complaint that he "was exonerated of

parental kidnapping from the United States on June 18, 2008" is equally specious.  Such a conclusory

assertion, without explanation of its basis, fails to satisfy current federal pleading standards.  Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (conclusions and naked assertions are insufficient).  In any

event, the purported basis for this contention has been more candidly disclosed by him in his pending

claim against the U.S. Department of Justice, of which this Court can take judicial notice.  See Lazaridis

v. United States Department of Justice, No. 1:09-cv-01177-RMC (D.D.C.).  As stated in his complaint

in that action, the basis of Lazaridis's "exoneration" is an alleged June 18, 2008 decision by a Greek

Court in Heraklion, Crete supposedly finding that Lazaridis's removal of V.L. from Michigan was

lawful.  Id., ECF Entry No. 1. at ¶ 36 ("On June 18, 2008, the Single-Member Penal Court of Heraklion,

Crete, exonerated the first plaintiff of the charge of kidnapping or custodial interference with respect to

the removal of his child from the United States to Greece in 2002.")  Whatever such decision may have

---

[20]   Indeed, Lazaridis effectively has admitted that his Michigan counsel has been unable to convince the Ottawa County Prosecutor to withdraw it.  See Lazaridis v. United States Department of Justice, No. 09-cv-01177-RMC (D.D.C.), CFS Entry No. 1, Comp. at ¶ 34-36.

been made in Greece, it was obviously not made under Michigan state law or American federal law and could in no way be binding on the Prosecutor for Ottawa County.

There also is a substantial and inextricable nexus between Lazaridis's fugitive status and the present federal litigation in Maryland, which fully warrants application of the fugitive disentitlement doctrine. This case, as does the pending Michigan kidnapping proceeding he is evading, both concern Lazaridis's putative custody rights with respect to his daughter; and constitute ongoing episodes in the same protracted custody litigation that he has been engaging in with his former spouse for almost a decade.

Furthermore, central to his current Complaint in this Court are his repeated claims of denial of due-process and other fundamental rights as a <u>foreign custodial parent</u> residing in Greece, who allegedly is being wrongfully burdened by UCCJEA litigation in the United States. <u>See</u> Comp. ¶ 50 (UCCJEA "registration . . . places an unreasonable litigation burden on <u>foreign</u> respondents."); ¶ 55 (UCCJEA proceeding involves a "denial of choice of law to a <u>foreign</u> respondent and child is oppressive"); ¶ 77 (in the UCCJEA proceeding "plaintiff's minor child was denied fundamental due process rights originating in <u>foreign</u> law"). The propriety of Lazaridis's flight with his daughter from Michigan to Greece, however, and his living abroad with her as a foreign parent, rather than having remained with his daughter in Michigan as ordered, is precisely the conduct at the heart of the Michigan criminal case. It would be both highly paradoxical and grossly inequitable, while Michigan remains deprived by Lazaridis of the ability to adjudicate whether he <u>properly</u> became a foreign custodial parent to begin with, for Lazaridis to be permitted to pursue rights in this Court premised on his properly being such a

foreign-based parent with lawfully procured overseas custody of V.L.[21]  See, e.g., Lazaridis v. The

Herald Co., 2006 WL 222839 (W.D. Mich. 2006); aff'd, No. 06-1830 (6th Cir., March 13, 2007).

(Exhibits 3 and 4).  In fairness, under the fugitive disentitlement doctrine, Lazaridis's ability to proceed

in Maryland should await his honoring of his long-evaded obligation to return to Michigan.

Additionally, given Lazaridis's litigation history and his relentless filing of multiple

misconceived lawsuits in this Court and others, there is a grave risk that permitting him to litigate

outside the effective supervisory reach of this Court will simply enable him to harass and retaliate

against his former wife and her attorneys without fear of sanction.  Sarlund v. Anderson, 205 F.3d 973,

975 (7th Cir. 2000).

Furthermore, as noted by the Sixth Circuit in affirming dismissal of Lazaridis's case against the

Herald Company, Lazaridis's residence abroad and his disincentive to travel to the United States would

likely cause delays and other difficulties in the administration of his lawsuit, prejudice the defendants

with trying to conduct whatever discovery might be permissible abroad under a foreign legal system,

and if defendants prevail, make the recovery of those and other costs from Lazaridis, including

attorneys' fees impossible or impractical.  The lack of his physical presence also will impede the

conducting of proper cross-examination at any trial.  Lazaridis v. Herald Co., App. No. 06-1830, Slip

Op. (attached as Exhibit 4) at * 4[22].

---

[21]  This critical point was neither briefed nor considered in Lazaridis v. Wehmer, 2008 WL 3823906 (3d. Cir., Aug. 15, 2008), in which the Third Circuit demurred from following the Sixth Circuit in applying the fugitive disentitlement doctrine.
[22]  In this respect, the present action is markedly different from Lazaridis's pending claim in Lazaridis v. United States Department of Justice, No. 1:09-cv-01177-RMC (D.D.C.), in which Judge Collyer recently rejected the DOJ's motion to dismiss based upon the fugitive disentitlement doctrine.  See id., 713 F. Supp. 2d 64, 69 (D.D.C. 2010) (decision attached as Exhibit 9).  The claim against the DOJ in that case merely seeks documents under the Freedom of Information Act, in proceedings which are almost invariably decided on the papers and without need for discovery, and which will not require Lazaridis to personally present his case in court and testify.  Id.  In stark contrast, the assertion of statutory and common law tort claims, such as Lazaridis's in this case, including demands for both compensatory and punitive damages (see 2010 Comp. ¶ 8) will require pre-trial discovery from Lazaridis and Lazaridis's presence in Court to present his case, testify, and test his credibility through cross-examination, assuming his claims not dismissed as a matter of law.

For all of these reasons, this Court should once again, as both it and other federal courts have in the past, bar Lazaridis from bringing suit while remaining a fugitive from justice, and should exercise its equitable discretion to dismiss his claims.

CONCLUSION

For all the reasons stated above, defendant Cullen submits that Lazaridis has failed to state claims for which relief may be granted, and urges that the Complaint be dismissed with prejudice pursuant to Rule 12.  In addition, as shown above, Lazaridis's claims are frivolous and malicious and under the guidelines of 28 U.S.C. § 1915(e)(2)(B) should also be dismissed on that additional basis.

Respectfully submitted,

/s/ Anthony W. Kraus
Anthony W. Kraus (Bar No. 2351)
akraus@milesstockbridge.com
Jeffrey P. Reilly (Bar No. 5837)
jreilly@milesstockbridge.com
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202
Tele. (410) 727-6464
Fax.  (410)-385-3700

Counsel for Defendant Stephen J. Cullen

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2010, I caused to be filed with the Court's CM/ECF system, for service on all parties or record counsel, the foregoing Motion of Defendant Stephen Cullen to Dismiss, Memorandum and Exhibits 1-15 in support thereof, Appendix of Unreported Cases, and draft order.   I further certify that on the same day copies of these documents were mailed, first class, postage prepaid, to

> Emmanuel N. Lazaridis
> 409 Cathedral Street
> Baltimore, MD 21201
>
> Tina Leukothea Golm
> 17277 Rolling Dunes Drive
> West Oliver, MI  49460

In addition, on the same day a courtesy copy was mailed to

> Emmanuel N. Lazaridis
> Lazaridis-Kortsidakis
> Smyrnis 14
> 71201 Heraklion
> Crete, GREECE

> /s/ Anthony W. Kraus
> Anthony W. Kraus